UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.A.H., <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, et al., <br><br> Respondent. | No. 1:25-cv-01758-DJC-EFB <br><br><br> ORDER |

This matter is before the Court on Petitioner's Motion for Temporary Restraining Order. For the reasons explained below, the Court GRANTS IN PART AND DENIES IN PART the Motion.

**BACKGROUND**

Petitioner A.A.H. is a national from Afghanistan who entered the United States without inspection on or around November 21, 2022. (Habeas Petition ("Pet.") (ECF No. 1) ¶ 12.; Rojas Acevedo Decl. (ECF No. 4-1) ¶ 3.) Federal agents detained Petitioner after he entered the United States. (*See* Rojas Acevedo Decl. ¶ 3.) Petitioner was released on humanitarian parole pursuant to Immigration Nationality Act § 212(d)(5) (Mot. TRO (ECF No. 4) at 9 citing Pet. ¶ 32) and released on his own recognizance with a notice to appear for removal proceedings in immigration court in

1

1  San Francisco on August 7, 2024.  (Mot. TRO at 9; Pet. ¶ 33.)  When the Concord
2  Immigration Court opened, DHS transferred Petitioner's immigration case to that
3  court, and issued Petitioner a new hearing date for August 25, 2025, which he
4  contends was postponed such that he has not yet had to attend an immigration court
5  proceeding.  (Pet. ¶ 34.)

6  An asylum officer found that Petitioner established credible fear based on his
7  prior employment with an American company in Afghanistan.  (*Id*. ¶ 33.)  Around
8  October 2023, Petitioner applied for and ultimately received Temporary Protected
9  Status through May 2025.  (Rojas Acevedo Decl. ¶ 3.)  In December 2024, Petitioner
10  filed an asylum application and has an individual hearing scheduled for December 7,
11  2028.  (Pet. ¶ 35; Rojas Acevedo Decl. ¶ 3.)  He also received employment
12  authorization from June 2025 through June 2030.  (Pet. ¶ 37.)

13  Petitioner was arrested and detained at a check in on December 4, 2025.  (*Id*.
14  ¶ 40.)  Following Petitioner's detention, an ICE agent told Petitioner's counsel that the
15  basis for his detention was "NTR" or "Notice to Report."  (*Id*. ¶¶ 40, 41.)  A few hours
16  later, Petitioner's counsel was told that Petitioner was detained for violating his order
17  of supervision and failing to report for his biometrics.  (*Id*.)  Petitioner represents that
18  since his release, he has complied with all supervision terms, including attending all
19  required check-ins, and has no criminal record.  (Pet. ¶¶ 33, 36, 41; Rojas Acevedo
20  Decl. ¶ 3.)

21  Petitioner's counsel alleges, on information and belief, that Petitioner is
22  currently detained at the California City Detention Center.  (Pet*.* ¶ 42.)  Petitioner filed
23  a Petition for Writ of Habeas Corpus along with a Motion for Temporary Restraining
24  Order.  The Motion for Temporary Restraining Order is fully briefed.  (*See* Opp'n (ECF
25  No. 6); Reply (ECF No. 7).)  The matter was submitted without oral argument pursuant
26  to Local Rule 230(g).
27  ////
28  ////

2

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). [I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

**DISCUSSION[1]**

**I.  Likelihood of Success on the Merits**

Petitioner's Habeas Petition raises two claims for relief based on violations of substantive and procedural due process under the Fifth Amendment. (*See generally* Pet.) Petitioner now seeks an order (1) granting immediate release from custody and prohibiting re-detention absent an order from this Court, or alternatively a pre-deprivation bond hearing; (2) returning all property confiscated from Petitioner during his arrest and processing into detention; and (3) prohibiting transferring Petitioner out of this District or deporting him pending his habeas petition. (*See* Mot. TRO at 20.)

Respondents argue that Petitioner is unlikely to succeed on the merits of his claims because he is an "applicant for admission" subject to mandatory detention under 8 U.S.C. § 1225 and not entitled to release or a bond hearing. (Opp'n at 2–3.)

---

[1] The Court DENIES Petitioner's Motion to the extent that he requests to have Respondents enjoined from transferring Petitioner out of this District or deporting him pending these habeas proceedings as he has not demonstrated that such issue is ripe for resolution at this time.

The Court has previously discussed the Government's reading of section 1225, and the relationship to section 1226. *Doe v. Becerra,* 787 F. Supp. 3d 1083, 1091–93 (E.D. Cal. 2025); *Morillo v. Albarran,* No. 1:25-cv-01533-DJC-AC, 2025 WL 3190899, at *2–4 (E.D. Cal. Nov. 15, 2025). Here, Petitioner was released from DHS custody based on findings that he was not a flight risk or a danger to the community.

Petitioner is likely to succeed on the merits of his claim that his re-detention without a pre-deprivation hearing violated due process. This Court, along with other courts in this Circuit, recognize a liberty interest for individuals who have been released from ICE custody on their own recognizance. *See Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032–33 (N.D. Cal. 2025).

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend V; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Here, DHS released on Petitioner own his recognizance. Petitioner has a clear liberty interest in his continued freedom.

Because such a liberty interest has been established, the Court applies the balancing test in *Mathews v. Eldridge,* 424 U.S. 319 (1976). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

Petitioner has a substantial private interest in remaining out of custody.  He has an interest in remaining in his home, continuing his employment, obtaining necessary medical care, and providing for his family.  *See Diaz v. Kaiser*, No. 3:25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (cleaned up) (holding that petitioner had a substantial private interest in remaining out of custody where it would enable to him to "work[ ], liv[e] at home, and be[ ] with family and friends to form the enduring attachments of normal life.").  There is also a significant risk that the government will erroneously deprive Petitioner of that liberty interest without a pre-deprivation hearing.  Where, as here, "[the petitioner] has not received any bond or custody. . .hearing," "the risk of erroneous deprivation is high" because there has been no opportunity to determine whether there is any valid basis for Petitioner's detention.  *Singh v. Andrews*, ---- F. Supp. 3d ----, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025) (cleaned up).  Here, Petitioner has no criminal record and alleges that he has attended every check in.  Lastly, Respondents' interest in detention is low.  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *see Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).  The effort and cost required to provide Petitioner with procedural safeguards are minimal.

## II. Remaining Factors

Additionally, Petitioner will suffer irreparable harm in the absence of preliminary injunctive relief.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted).  Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez*, 872 F.3d at 995.  Here, detention deprives Petitioner of access to his medical team, his family and his community.  (Mot. TRO at 19.)  The Petitioner has thus established irreparable harm.

The final two *Winter* factors merge when the government is the nonmoving party. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted). Public interest concerns are also implicated as "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (internal quotations and citations omitted). "The government also cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Baird*, 81 F.4th at 1042 (internal quotations and citations omitted). Moreover, the "public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Pinchi*, 792 F. Supp. 3d at 1037 (citation omitted).

Here, the harm to Petitioner is significant as he faces prolonged ICE detention. The harm to Respondents is minimal as the only potential hinderance the government may experience is a short delay in re-detaining Petitioner. The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Further, there is no argument that Petitioner is now a risk of flight or a danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 4) is GRANTED IN PART AND DENIED IN PART;
2. Petitioner A.A.H. shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest – and detention, and a timely hearing.  At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall have his counsel present.

4. Respondents must return to Petitioner all property confiscated from him during his arrest and processing into detention, including but not limited to any personal identification, employment authorization document, medical insurance card, money, and documents he received upon entry and release into the United States.

5. Respondents are ORDERED TO SHOW CAUSE on or before December 22, 2025, as to why this Court should not issue a preliminary injunction on the same terms as this Order.  On or before December 26, 2025, Petitioner may file a Reply, if any.  The Parties may stipulate to other dates, subject to Court approval.  The Preliminary Injunction is not currently set for a hearing but the Court may subsequently order one if it is deemed necessary.

IT IS SO ORDERED.

Dated:   **December 16, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – AAH25cv01758.tro_v1